

Entered on Docket
May 29, 2008
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed: May 29, 2008

_____
**LESLIE TCHAIKOVSKY**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>MARK LYLE WADLEY and<br>DENISE MARIE WADLEY,<br><br>        Debtors.<br>_____/ | No. 07-41427 TG<br>Chapter 13 |
| MARK LYLE WADLEY and<br>DENISE MARIE WADLEY,<br><br>        Plaintiffs,<br><br>   vs.<br><br>STEVEN L. JACOBS<br><br>        Defendant.<br>_____/ | A.P. No. 07-4158 |

**MEMORANDUM OF DECISION AFTER TRIAL**

In the above-captioned adversary proceeding, Plaintiffs Mark and Denise Wadley (the "Debtors") seek a judgment for damages against Defendant Steven Jacobs ("Jacobs"), their former bankruptcy counsel, in the amount of $5,235.35 on grounds of legal malpractice. Having considered the evidence and argument presented at trial, the Court finds and concludes that, due to Jacobs' negligence, the Debtors have suffered damages in the amount of $543. Judgment will be entered in favor of the Debtors in accordance with this decision.

## SUMMARY OF FACTS

In January 2007, the Debtors contacted Jacobs about filing a bankruptcy petition. On January 13, 2007, they met with Jacobs at his San Leandro office[1] and paid him $200 as a retention fee. At this meeting, Jacobs advised the Debtors to stop making payments to their creditors. He told them to gather required documents and bring them to his office along with a $300 processing fee.[2]

Plaintiffs followed Jacobs' advice and stopped making payments to their creditors. However, for personal reasons and in order to accumulate sufficient cash to pay him the additional $300, they did not return to Jacobs' office to proceed with the bankruptcy until March 27, 2007. A member of Jacobs' staff told the Debtors that they would receive a phone call when their bankruptcy forms had been prepared. An appointment would be made at that time for them to sign the bankruptcy forms. They were told that the forms would be completed and ready for their signatures in approximately two weeks.

---

[1] Jacobs' primary law office is in San Leandro, California. It is staffed during normal business hours five days a week. He also operates five satellite offices where he meets with clients by appointment only. These offices are normally open only one day a week for two to three hours. The office is not staffed at other times although there is a general building receptionist who can refer clients to Jacobs' San Leandro office. Any telephone calls that are made to a satellite office are received in Jacobs' San Leandro office.

[2] No evidence was presented that Jacobs warned the Debtors not to stop paying their creditors if they delayed filing for bankruptcy.

2

Exactly two weeks later, on April 10, 2007, the Debtors' car was repossessed. The Debtors had not yet received a phone call from Jacobs advising them that their bankruptcy forms were ready to be signed. Denise Wadley telephoned Jacobs' office and spoke with one of his employees. She told the employee that their car had been repossessed and that she needed to speak with Jacobs immediately. She was told that she needed an appointment to speak with him and that the next available appointment was one week later, on April 17, 2007. An appointment was scheduled for that date.[3]

In the meantime, the Debtors were able to obtain the return of their car by borrowing sufficient funds from Mark Wadley's mother to pay off the balance due plus the towing fees and other repossession charges. When they met with Jacobs on April 17, he told them that, under the circumstances, there was nothing more than he could do for them with respect to the car. The Debtors were advised that Jacobs' office had not yet begun preparing their forms and that it would be two more weeks before they were ready to be signed.

Again, the Debtors did not hear back from Jacobs' office within two more weeks. On May 7, 2007, the IRS levied on funds in Debtors' bank accounts. As a result, Plaintiffs incurred several overdraft charges. On May 10, 2007, the Debtors contacted Jacobs' office for assistance in obtaining the release of this levy. They met with

---

[3] Jacobs' office manager testified that this was not the office's customary procedure. Normally, if a client advised someone in Jacobs' office that his car had been repossessed, an appointment would be scheduled the same day, a skeleton petition would be filed, and they were usually able to obtain a prompt release of the car.

3

Jacobs at his San Leandro office on the same day. While present at Jacobs' office, Mark Wadley telephoned the IRS and got the levy released. On the same day, Jacobs prepared and filed a skeleton petition for the Debtors. Due to his office's delay in filing their petition, Jacobs voluntarily refunded to the Debtors the $500 that they had tendered to him for his services thus far. The balance of the required documents, including the Debtors' plan (the "Plan"), were not filed until June 4, 2007.

After the bankruptcy petition was filed, in June 2007, the IRS either levied on or purported to assert an offset against the Debtors' California state tax refund (the "State Tax Refund") to satisfy a portion of the Debtors' federal tax liability. The Debtors asked Jacobs' office to assist them in obtaining a release of these funds. Jacobs' office faxed a letter to the IRS requesting the return of the State Tax Refund.[4] The IRS declined to return the State Tax Refund. Nothing further was done to obtain its return.

On June 19, 2007, the Chapter 13 Trustee (the "Trustee") filed a motion asking the Court to review the reasonableness of Jacobs' fees under 11 U.S.C. § 329. The motion was scheduled for hearing on August 17, 2007. In the motion, the Trustee noted that a meeting of creditors was scheduled in the Debtors' case for June 14, 2007. Local Rule 3015-1(b)(1) required that notice of the Plan be given to creditors at least 25 days prior to this date. Because the Plan was not filed with the petition, the Debtors were required to provide

---

[4]The evidence concerning this occurrence was somewhat confused as the date on the faxed letter, May 24, 2007, preceded the date of the IRS levy.

4

this notice. They failed to do so in time to permit the Plan to be recommended for confirmation on June 14, 2008.

The motion also stated that the Trustee did not receive copies of the Debtors' most recently filed federal tax return or 60 days of payment advices until June 12, 2007, two days before the meeting of creditors. The motion noted that, at the meeting of creditors, the Debtors testified that they had provided these documents to Jacobs' office three weeks prior to the meeting of creditors. As a result, she requested that Jacobs' fees be reduced by an additional $300.

On July 11, 2007, the Court received a letter from the Debtors expressing their dissatisfaction with the service provided to them by Jacobs. In response, the Court issued an Order to Show Cause Re Disgorgement of Fees (the "OSC"), which it scheduled for hearing on the same date set for the Trustee's motion. The OSC required Jacobs to show why his fees should not be reduced by an amount greater than the $300 reduction requested by the Trustee for the reasons stated in the Debtors' letter. Jacobs moved to withdraw as the Debtors' attorney on August 14, 2007 and agreed to accept any reduction in fees that the Court found appropriate.

The hearing on the OSC was rescheduled for September 24, 2007, at which time Jacobs' motion to withdraw as the Debtors' attorney was granted. At that hearing, Jacobs' counsel stated that Jacobs had voluntarily refunded all of his fees to the Debtors. The Court advised the Debtors that an adversary proceeding would be required if they wished to seek affirmative relief, such as damages.

On October 3, 2007, the Debtors filed this adversary proceeding, seeking damages totaling $5,235.35, consisting of: (1) the amount paid from funds borrowed from Mark Wadley's mother to obtain the return of the Debtors' car in the amount of $3,313.35, (2) the amount of the State Tax Refund in the amount of $1,379.00, (3) $300.00 for phone calls made to the IRS to obtain a release of its pre-petition levy on the Debtors' bank account, and (4) $243.00 in overdraft charges incurred as a result the IRS pre-petition levy on the Debtors' bank account.

**DISCUSSION**

**Applicable Law.**

The applicable law in an action for legal malpractice is the law of the state in which legal services were provided. In re Del-Met Corp., 322 B.R. 781 (Bankr. M.D. Tenn. 2005). In this case, because Jacobs provided legal services to the Debtors in California, California law applies. Under California law, the elements of a legal malpractice claim are: (1) the existence of a duty; (2) the breach of the duty; (3) damages; and (4) proximate cause. Lazy Acres Market, Inc. v. Tseng, 152 Cal. App. 4th 1431 (2007). An attorney who commits legal malpractice is liable for all damages directly and proximately caused by his negligence. Ferguson v. Lieff, Cabraser, Heimann & Bernstein, 30 Cal. 4th 1037, 1045 (2003).

**Duty and Breach of Duty.**

The Debtors retained Jacobs as their bankruptcy counsel in January 2007. At that point, an attorney-client relationship was established. See Benninghoff v. Superior Court, 136 Cal. App. 4th

61, 72 (2006), (when a party seeks legal advice from an attorney and the attorney provides that advice, an attorney-client relationship is established prima facie). From that point on until his motion to withdraw was granted, Jacobs owed the Debtors a duty to use such "skill, prudence, and diligence as members of the profession commonly possess and exercise." <u>Rose v. Hudson</u>, 153 Cal. App. 4th 642, 649-50 (Cal. Ct. App. 2007). This duty included preparing and filing the required bankruptcy documents promptly and giving the Debtors competent advice about how to conduct themselves in connection with the bankruptcy both before and after filing the petition.

Jacobs breached this duty in several respects, either personally or through the agency of his employees. First, he advised them to stop paying their creditors without cautioning them that this advice was conditioned on their completing their bankruptcy documents and filing their bankruptcy within a short period of time. Second, his office failed to prepare the Debtors' bankruptcy documents promptly after the Debtors paid the processing fee. Third, when informed that the Debtors' car had been repossessed, Jacobs' office failed to schedule an emergency appointment so that Jacobs could obtain its release. Fourth, even after Jacobs learned of his office's failure to schedule an emergency appointment, he failed to have his office prepare the Debtors' bankruptcy documents promptly. This permitted the IRS to levy on the Debtors' bank account and gave rise to overdraft charges and phone charges to obtain the release of the levy.

**Proximate Cause and Damages.**

The more difficult issues are whether any of these breaches proximately caused the Debtors' damages. The Court will examine each of the items of damage claimed by the Debtors to determine whether it was proximately caused by a breach of Jacobs' duty of care.

**Car Repossession Expenses.**

The largest element of the Debtors' damages claim is the payment made from funds borrowed from Mr. Wadley's mother to obtain the release of their car after it had been repossessed. Based on the evidence presented at trial, as recited above, the Court concludes that Jacobs' delay in preparing and filing the bankruptcy petition for the Debtors was not the proximate cause of this alleged element of damages.

It was not unreasonable, absent knowledge of an emergency, for Jacobs' office to take two weeks to prepare the bankruptcy documents. The car was repossessed exactly two weeks after the Debtors were promised that the papers would be ready. Although Jacobs' office had not yet started preparing the documents on the day the car was repossessed, even if the papers had been completed by then and the Debtors had signed them, more likely than not, the bankruptcy petition would not have been filed until the following day.

Jacobs' negligent advice to stop paying creditors without regard to when the bankruptcy processing fee was paid may have been the proximate cause of the repossession. However, given the Debtors' testimony that they delayed going forward with the bankruptcy so as

8

to save money for the processing fee, it is just as likely that they stopped paying their car creditor due to lack of funds.

In any event, the Debtors failed to establish the amount of any monetary damages that resulted from the repossession. The funds borrowed from Mr. Wadley's mother were used to pay off their debt to the car creditor. Although they now owe a debt for the loan to Mr. Wadley's mother, they no longer owe the debt to the car creditor. Jacobs' negligent failure to schedule an emergency appointment so as to obtain a prompt release of the car would have eliminated their need to borrow the funds. However, they then still would have owed the debt on the car. Thus, they are no worse off than they were before.

**State Tax Refund.**

The second largest element of the Debtors' damages claim is the amount of the State Tax Refund levied upon or offset by the IRS. Jacobs' delay in preparing the Debtors' bankruptcy documents was not the cause of this event which occurred post-petition. The levy may have been wrongful, and Jacobs' efforts to obtain its release may have been inadequate and constituted malpractice. However, the Debtors failed to establish this element of their claim.

**Phone Calls to the IRS.**

The Debtors also claim $300 in damages for the cost of phone calls made on Mr. Wadley's cellular phone from Jacobs' office to the IRS to obtain the release of the levy on the Debtors' bank account. The Court finds and concludes that Jacobs' negligent delay in filing the Debtors' bankruptcy petition was the proximate cause of this

9

element of damages. Jacobs has not contested that the charges were actually incurred or the amount of the damages claimed. Thus, the Debtors are entitled to judgment for this amount.

**Overdraft Charges.**

For the same reason, the Court concludes that the Debtors are entitled to judgment for the $243.00 in overdraft charges incurred as a result of the IRS levy on their bank account. Although Mr. Wadley testified that the IRS released the levy because he was able to convince them that it had been made by mistake, the Court is persuaded that it is more probable than not that the mistake would not have been made had the Debtors been able to file for bankruptcy more promptly.

## CONCLUSION

Jacobs committed legal malpractice by negligently delaying the filing of the Debtors' bankruptcy petition. Jacobs' negligence caused the Debtors to incur damages in the amount of $543.00. Judgment will be entered for Plaintiffs in this amount.

END OF DOCUMENT

COURT SERVICE LIST

Mark Wadley
Denise Wadley
4679 Sloan St.
Fremont, CA 94538

Steven L. Jacobs
Law Offices of Steven L. Jacobs
Sanwa Bldg. #350
14895 E 14th St.
San Leandro, CA 94578

James A. Pixton
Law Offices of James A. Pixton
1524-A Lincoln Ave.
Alameda, CA 94501